Filed 11/18/24  P. v. Dancy CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL IRVING DANCY, JR.,<br><br>Defendant and Appellant. | B330949<br><br>(Los Angeles County<br>Super. Ct. No. BA037956) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Shelly B. Torrealba, Judge.  Reversed with directions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Samuel Irving Dancy, Jr. appeals from a postjudgment order denying his Penal Code former section 1170.95 (now section 1172.6)[1] petition with respect to his first degree murder conviction. Dancy contends, the People concede, and we agree the superior court erred in finding Dancy was ineligible for relief as a matter of law. We reverse and direct the court to issue an order to show cause and hold an evidentiary hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 1991, Carlos Castillo was selling cocaine when he was killed by a single gunshot to his lower back.[2] The shooter got into a burgundy Chevrolet Monte Carlo and drove off. Raymond Freeman was with Castillo immediately before the shooting. He testified two men tried to buy cocaine from Castillo and Dancy looked like one of the men.

Rechelle Mann and Jaime Velasquez were nearby when the shooting occurred. Mann testified she saw a man matching Dancy's description get out of a Monte Carlo to buy cocaine. Velasquez testified he did not remember what happened nor talking to the police. However, Los Angeles Police Detective Hollis Randales testified Velasquez told him the following: a burgundy Monte Carlo pulled up with three men inside, the men tried to buy "dope," Velasquez heard a gunshot and saw Castillo

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

[2] The facts are taken from our opinion on Dancy's direct appeal. (*People v. Dancy* (June 28, 1995, B080834) [nonpub. opn.].) We provide the facts for background purposes only.

had been shot, and Velasquez wrote down the license plate number of the Monte Carlo on his arm.

Shortly after the shooting, Dancy agreed to talk to police. He said he and two other men planned to rob Castillo during a drug deal. Dancy and one of the men approached Castillo, while the other man waited in the car. During the drug exchange, Dancy pulled out a gun. Castillo also pulled out a gun. Thinking Castillo was going to shoot him, Dancy fired his gun, not intending to shoot Castillo, but to make everyone move back and thin out the crowd. Dancy did not believe anyone had been hit, but later one of his accomplices said he thought Dancy had shot someone. At trial, Dancy testified his statements to the police were not true and he was not at the location of the shooting.

The trial court instructed the jury with the following relevant jury instructions: aiding and abetting (CALJIC Nos. 3.00, 3.01), homicide (CALJIC No. 8.00), felony murder (CALJIC No. 8.10),[3] first degree felony murder (CALJIC No. 8.21),[4]

---

[3] The instruction on felony murder provided: "Every person who unlawfully kills a human being during the commission or attempted commission of robbery is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed[,] [¶] 2. The killing was unlawful, and [¶] 3. The killing occurred during the commission or attempted commission of robbery."

[4] The instruction on first degree felony murder provided: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of robbery is murder of the first degree when the perpetrator had the specific intent to commit such crime. [¶] The specific intent to commit robbery

3

robbery (CALJIC No. 9.40), the special-circumstance allegation of murder during the course of a robbery (CALJIC No. 8.81.17),[5] and personal use of a firearm in the commission of a felony (CALJIC No. 17.19).

On November 10, 1993, a jury convicted Dancy of first degree murder (§ 187, subd. (a)) and second degree robbery (§ 211). The jury also found true the special-circumstance allegation that the murder was committed in the commission of a robbery (§ 190.2, subd. (a)(17)), and that Dancy personally used a firearm in the commission of both the robbery and the murder (§§ 1203.06, subd. (a)(1)), 12022.5, subd. (a)). The trial court sentenced Dancy to life in state prison without the possibility of parole. We affirmed the judgment on June 28, 1995. (*People v. Dancy*, *supra*, B080834.)

---

and the commission or attempted commission of such crime must be proved beyond a reasonable doubt."

[5]     The instruction on the special circumstance provided: "To find that the special circumstance, referred to in these instructions as murder in the commission of robbery, is true, it must be proved: [¶] 1a. The murder was committed while the defendant was engaged in the commission or attempted commission of a robbery; or [¶] 1b. The murder was committed during the immediate flight after the . . . robbery . . . ; and [¶] 2. The murder was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the attempted robbery was merely incidental to the commission of the murder."

4

On February 14, 2022, Dancy filed a petition for resentencing under section 1172.6; the People opposed.[6]  The superior court appointed counsel for Dancy.  After holding a prima facie hearing, the court denied Dancy's petition without issuing an order to show cause.  The court concluded, "Although [Dancy]'s jury was instructed on felony murder, he was the actual killer and is ineligible for resentencing . . . as a matter of law."  The court specifically pointed to the following as evidence that Dancy was convicted as the actual killer:  (1) the trial court's instructions and the jury's verdicts and findings; and (2) Dancy's "recorded, [M]irandized statement" that he "personally admitted to shooting the firearm."

Dancy timely appealed.

## DISCUSSION

A.  *Senate Bill 1437 and Section 1172.6*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584) and narrowed the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on

---

[6]    We grant Dancy's motion to augment the record to include Dancy's petition, the People's opposition, and Dancy's reply.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (§ 189, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2.  (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *People v. Strong*, at p. 708; *Gentile*, at pp. 842-843.)

SB 1437 also provided a procedure (codified in section 1172.6) for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" to petition the superior court to vacate the conviction and be resentenced on any remaining counts if the petitioner could not now be convicted of murder, attempted murder, or manslaughter because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a); see Sen. Bill No. 775 (2021-2022 Reg. Sess.) [extending SB 1437's ameliorative changes and procedure for potential relief to individuals convicted of attempted murder or manslaughter].)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)  The

6

prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief.  (§ 1172.6, subd. (c).)  If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel*, *supra*, 15 Cal.5th at p. 460.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*.  ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility

7

determination adverse to the petitioner,' " ' thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*); see *Curiel*, *supra*, 15 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.)  "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*).)

B.      *The Superior Court Erred in Denying Dancy's Petition*
        *Without Issuing an Order To Show Cause*

Dancy contends the superior court erred in finding he was ineligible for relief at the prima facie stage.  He contends the record of conviction does not conclusively establish he was convicted of felony murder as the actual killer.  The People agree, as do we.

Dancy declared in his petition that he was convicted at trial of murder under the felony-murder rule, and that he could not now be convicted of murder because of the changes to sections 188 and 189.  (See § 1172.6, subd. (a)(1)-(3).)  For purposes of determining if Dancy has stated a prima facie case, we accept these allegations as true, unless the record of conviction conclusively establishes his ineligibility as a matter of law.  (*Curiel*, *supra*, 15 Cal.5th at p. 460; *Lewis*, *supra*, 11 Cal.5th at p. 971.)  That record of conviction – including the trial court's instructions, the jury's verdicts and findings, and Dancy's statements to police – did not conclusively establish his ineligibility for relief.

First, the trial court's instructions and the jury's verdicts and findings on murder, the special circumstance, and the firearm enhancement do not conclusively establish that Dancy could still be guilty of murder under current law.  The trial court

8

instructed the jury on two theories of first degree murder: direct aiding and abetting (CALJIC Nos. 3.00, 3.01), and felony murder (CALJIC Nos. 8.10, 8.21). The jury's verdicts did not indicate under which theory it found Dancy guilty of first degree murder. It was therefore possible that the jury could have found Dancy guilty of first degree felony murder, the instructions for which left open the possibility that the jury could have found Dancy guilty of first degree murder without finding he was an actual killer. The instructions told jurors that to be liable for felony murder, the People had to prove "[a] human being was killed," and to be liable for first degree felony murder, the People had to prove a "killing of a human being . . . occur[red]." The instructions did not tell the jurors they had to find Dancy actually killed a human being.[7] (See *Lopez*, *supra*, 78 Cal.App.5th at p. 20 [jury instructions "created the possibility the jury convicted defendant of felony murder . . . without finding him to have been the actual killer" because jury instruction did not instruct the jury that "it had to find defendant personally killed the victim to convict him"].)

The trial court also instructed the jury with CALJIC No. 8.81.17, the instruction on the felony murder special circumstance. By finding the special circumstance true, the jurors did not necessarily have to believe Dancy personally killed Castillo. Nothing in the instruction required the jury to find

---

[7] The same is true of the general homicide instruction (CALJIC No. 8.00), which provided, "Homicide is the killing of one human being by another, either lawfully or unlawfully. Homicide includes murder and manslaughter, which are unlawful, and the acts of excusable and justifiable homicides, which are lawful."

9

Dancy himself was an actual killer. Rather, the instruction told the jurors that to find the allegation true, the People merely had to prove a murder was committed during a robbery. (See *Lopez*, *supra*, 78 Cal.App.5th at p. 20 ["[t]he jury instructions created the possibility the jury convicted defendant of felony murder and found to be true the robbery-murder special-circumstance allegation without finding him to have been the actual killer," because "[t]he jury might have found defendant, though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation"].)

Additionally, the trial court instructed the jury with CALJIC No. 17.19, the instruction on the enhancement for personally using a firearm. It instructed the jury that the term "used a firearm" meant "to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it." A true finding on this enhancement does "not in itself prove [a] defendant was the actual killer." (*People v. Jones* (2003) 30 Cal.4th 1084, 1120.) For example, "[i]f two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*Ibid.*) In other words, in finding true the allegation that Dancy personally used a firearm in the commission of the murder, it is possible the jury could have found Dancy displayed the firearm in a menacing manner or fired the weapon without hitting someone.

Finally, Dancy's statement to police does not "irrefutably establish[]" he is ineligible for relief. (*Harden, supra*,

10

81 Cal.App.5th at p. 56.) Dancy told the police he shot at Castillo. However, the jury could have disbelieved Dancy's statement he fired his gun and instead believed he was one of the other accomplices, considering he testified at trial that his statements to police were not true. By crediting as true Dancy's statements to police, and discrediting his testimony at trial, the superior court made credibility determinations, which are impermissible at the prima facie stage. (See *Harden*, at p. 51 [" '[T]he trial court should not decide unresolved factual issues[ ] that involve credibility determinations or weighing of evidence. Rather, it should decide such issues only after issuing an order to show cause and holding an evidentiary hearing.' "].) Without improperly weighing credibility of the trial witnesses, we cannot say that the record of conviction establishes as a matter of law that Dancy was the actual killer.

## DISPOSITION

The order denying Dancy's petition for resentencing is reversed. On remand, the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).


STONE, J.

We concur:


MARTINEZ, P. J.


FEUER, J.

11